# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CHARLES E. WALKER,  )<br>  )<br>　　Appellant,  )<br>  )<br>v.  )<br>  )<br>FAMILY TRUST SERVICES, LLC, et al.,  )<br>  )<br>　　Appellees.  ) | Case No. 3:16-cv-01976<br>Judge Aleta A. Trauger |

## MEMORANDUM & ORDER

Debtor-Appellant Charles E. Walker appeals from the July 13, 2016 Order (the "Order") of the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court") in the Chapter 11 case *In re: Charles E. Walker*, Case No. 3:16-bk-03304, granting the appellee's Motion to Appoint Trustee. (Doc. No. 1; *see also* B'cy Doc. Nos. 134 (Order Granting Motion to Appoint Trustee, 145 (Notice of Appeal of Order).)[1] The following motions ancillary to the appeal are also pending: (1) Appellees' Motion to Supplement Record and Take Judicial Notice (Doc. No. 25) (as corrected by Doc. No. 29); and (2) Appellees' Motion to Consider Post-Judgment Facts and Take Judicial Notice (Doc. No. 34).

The appeal and the motions have been fully briefed by both parties. For the reasons set forth herein, the Order will be affirmed, and the other pending motions will be denied as moot.

## I.    Background and Procedural History

Debtor Charles E. Walker filed a voluntary personal Chapter 11 Bankruptcy Petition with the United States Bankruptcy Court for the Western District of Tennessee on February 29, 2016.

---

[1] Documents filed in Case No. 3:16-bk-03304 will be referred to herein by their docket number in that case, denoted as "B'cy Doc. No. ___." Documents filed in this case are referred to simply by docket number ("Doc. No. ___").

(B'cy Doc. No. 1.) The case was transferred to the Bankruptcy Court for the Middle District of Tennessee on May 6, 2016. Appellees Family Trust Services, LLC, Billy Gregory, Steven Reigle, Regal Homes Co., and John Sherrod are also the plaintiffs in a civil tort suit against Walker and REO Holdings, LLC ("REO"), filed in the Chancery Court for Davidson County, Tennessee and subsequently transferred to the Bankruptcy Court as an adversary proceeding. *Family Trust Services, LLC et al. v. REO Holdings, LLC et al.* ("*FTS v. REO*"), Adversary Proceeding Case No. 3:16-ap-90130 (M.D. Tenn. Bankr.) (formerly Chancery Court Case No. 15-780-BC).

On June 8, 2016, the appellees filed their Motion for Appointment of Trustee, pursuant to Rule 2007.1 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 1104. (B'cy Doc. No. 77.) In the Memorandum in support of this motion (B'cy Doc. No. 78), the appellees argued that appointment of a trustee was warranted under both 11 U.S.C. § 1104(a)(1), which provides for the appointment of a trustee in a Chapter 11 case "for cause," or under § 1104(a)(2), which provides for such an appointment if it is "in the interests of creditors, any equity security holders, and other interests of the estate." More specifically, the appellees argued that Walker and his company, REO, had engaged in deceptive and fraudulent business practices. Walker opposed the motion. (B'cy Doc. No. 105.) The Bankruptcy Court conducted an evidentiary hearing on July 12, 2016 and ruled from the bench and in a subsequent written Order that "sufficient grounds exist[ed] for appointment of a trustee pursuant to 11 U.S.C. § 1104." (B'cy Doc. No. 134.) The Bankruptcy Court summarized the salient evidence presented by the appellees at the hearing as follows:

> First was the testimony of Judith Weaver, which primarily related to portions of Exhibit 108 and Exhibit 60. And the bottom line is that Ms. Weaver is a notary in Georgia who is quite adamant that she did not sign the pertinent document that involved a quitclaim deed for the ultimate benefit of REO and Mr. Walker
> 
> The details get a little deep in terms of how notaries work but it, basically, boils

> down to the fact that she has certain procedures involving the embossing tool and a stamp and the way she signs her name and the type of ink she uses, and other factors that make it easy for her to tell when a document is not one that she signed or sealed. And the Court was quite convinced that this particular document, Exhibit 60, is one that she did not sign or seal and, therefore, in some manner or another REO and Mr. Walker ended up being the beneficiary of a document that was clearly forged by someone.
>
> The situation is somewhat similar with regard to a Tennessee Notary who testified, Rhonda Norman. The . . . upshot is the same, that she is absolutely convinced and the Court is likewise convinced that Exhibit 58, which is also a part of Exhibit 108, was a document that did, in fact include some type of forgery.

(July 12, 2016 Hr'g Tr. ("Hr'g Tr."), Doc. No. 11, at 39–40.)

The Bankruptcy Court acknowledged that it was unclear how the forgeries took place or the extent to which Walker was involved in orchestrating the forgeries. However, the Bankruptcy Court observed that it was "fairly . . . undisputed that there was fraudulent activity connected to Mr. Walker and REO, connected in the sense that it was done for the ultimate benefit of Mr. Walker and REO. Whether it was done at the behest of Mr. Walker and REO it's hard to tell. Whether it was . . . instigated by them there's no clear evidence. But we do know that the Debtors were directly connected, through the use of forged documents, to some very fraudulent activity." (Hr'g Tr. 40–41.) The Bankruptcy Court further noted that Walker had failed to rebut any of this evidence or offer an explanation that would satisfy the Court that Walker was unaware that dishonest acts were being perpetrated on his behalf. The Bankruptcy Court also found it significant that, after being accused of dishonesty in state court, Walker promptly filed his bankruptcy case in the Western District of Tennessee. The Bankruptcy Court noted that, to do so, Walker affirmatively lied on his petition, stating that he lived in Humboldt, Tennessee and that he had lived there for more than half of the preceding 180 days. (Hr'g Tr. 44–45.)

The Bankruptcy Court, however, did not base the decision to appoint a trustee on a finding that Walker had committed fraud. Under the statute, the Bankruptcy Court only needed to find "dishonesty, imcompetence, or gross mismanagement." (Hr'g Tr. 45.) In that regard, the

Bankruptcy Court determined as follows:

> One of two things had to occur . . . . That is, using forged documents, authenticating documents when there's not originals, signing a Petition saying you live in another place where you don't live. Either it's evidence of dishonesty or it's such an extraordinary inattention to detail and/or incompetence or mismanagement or something, that I don't know how I could feel comfortable leaving [Mr. Walker] in charge of a debtor in possession.
>
> So, even giving the most positive spin on it that you could possibly put, it's still some type of state of being oblivious to important details. And that would be enough in this type of case to justify appointment of a trustee. And I say that because I don't think it's necessary, for purposes of the hearing today, to make any kind of determination, and I make this quite clear, any kind of determination as to specific fraudulent intent or specific participation in fraud, or anything of that nature, because it's not necessary . . . . It's only necessary to find cause, and I find that there is cause, based upon the evidence that demonstrates that there is either a level of dishonesty that does not justify leaving [this case] going forward without a trustee, or there's a level of other cause, whether you call it incompetence, mismanagement, failure to pay attention to details that are critical to the business or whatever, it's still sufficient to indicate that this is not a person that needs to remain in control.

(Hr'g Tr. 45–46.)

Finally, the Bankruptcy Court noted that it did not have occasion to determine whether a preponderance of the evidence or a clear and convincing evidence standard applied, because the undisputed evidence in the record clearly and convincingly established that a trustee should be appointed. (Hr'g Tr. 47.) The Bankruptcy Court therefore granted the motion. John McLemore was selected as trustee by the U.S. Trustee's Office after input from numerous parties. (B'cy Doc. No. 165.)

Walker promptly appealed the Order to this court, and that appeal has now been fully briefed. (*See* Doc. No. 24 (Appellant's Brief); Doc. No. 26 (Appellees' Brief); Doc. No. 27 (Appellant's Reply).)

The Bankruptcy Court denied Walker's motion to stay proceedings there pending resolution of his appeal of the Motion for Appointment of Trustee. (B'cy Doc. No. 157.) During the pendency of this appeal, the appellees filed their Motion to Supplement Record and Take

Judicial Notice (Doc. No. 25), to which Walker has responded (Doc. No. 28); the Corrected Motion (Doc. No. 29), which replaces an exhibit filed with the original Motion to Supplement Record and Take Judicial Notice with the correct exhibit (Doc. No. 29-1), which Walker also opposes (Doc. No. 32); and Motion to Consider Post-Judgment Facts and Take Judicial Notice (Doc. No. 34), to which Walker has also responded (Doc. No. 35). In these motions, the appellees request that the court take notice that the trustee has had a plan confirmed and has substantially implemented the plan by selling numerous parcels of real property belonging to the bankruptcy estate, as a result of which this appeal may have "become moot or equitably moot" (Doc. No. 25, at 2), and that the trustee has made payment to secured creditors and has distributed substantial sums to unsecured creditors under the trustee's confirmed Second Revised Plan of Reorganization. The appellees point out that the sale of these properties "was the trustee's primary function in this case" and insist that the trustee "has come within arm's reach of having fully administered the estate at this point." (Doc. No. 34, at 2.)

## II.     Standard of Review of Bankruptcy Court Order

The court has jurisdiction over this matter pursuant to a federal statute providing that:

> The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . and, with leave of court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a). Most courts that have considered the issue have held that an order appointing a bankruptcy trustee is an immediately appealable order. *See, e.g.*, *Ritchie Spec. Credit Invs., Ltd. v. U.S. Trustee*, 620 F.3d 847, 851 (8th Cir. 2010) (collecting cases). *But see In re Cash Currency Exch., Inc.*, 762 F.2d 542, 547-48 (7th Cir. 1985) (holding that the appeal from the bankruptcy court's appointment of trustee to the district court was interlocutory in nature and thus unreviewable by the Court of Appeals). This court concludes that an order by the bankruptcy court appointing a trustee is immediately appealable as of right.

In hearing an appeal from a bankruptcy court's order, the district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *MNBA Am. Bank, N.A. v. Meoli* (*In re Wells*), 561 F.3d 633, 634 (6th Cir. 2009); *In re Rembert*, 141 F.3d 277, 280 (6th Cir. 1998).

**III. Analysis**

Walker argues that the Bankruptcy Court erred in appointing a trustee because (1) the appellees failed to establish that he engaged in fraud; (2) the Bankruptcy Court improperly shifted the burden of proof to him to explain why a trustee should not be appointed; (3) the Bankruptcy Court erred in ascribing an improper motive to Walker's filing his bankruptcy petition in an improper venue; and (4) the issues raised in *FTS v. REO* are barred by *res judicata*, as they have already been litigated in other courts. Although he had argued in his Responses to the appellees' Motion for Summary Affirmance and Motion for Sanction of Dismissal (Doc. Nos. 6, 9) that the appellees are not a proper party to this appeal, prompting the judge previously presiding over this action to direct the parties to brief the issue of standing (*see* Doc. Nos. 12, 15, 23), Walker does not raise the issue of standing in his initial Brief in support of his appeal.

In their Response Brief, the appellees argue that (1) the Bankruptcy Court did not abuse its discretion in appointing a trustee; and (2) the appeal has been rendered moot or equitably moot by subsequent events in the bankruptcy proceeding. The appellees' motions to supplement the record arise in connection with their contention that this appeal has been rendered moot. In his Reply Brief, Walker reprises his standing arguments and denies that his appeal is equitably moot.

**A. Standing**

Because standing is a threshold issue that may be raised *sua sponte* by the court in any proceeding, the court addresses this question first. *See S.E.C. v. Basic Energy & Affiliated Res.,*

*Inc.*, 273 F.3d 657, 665 (6th Cir. 2001) (noting that the federal courts are "under an independent obligation to police [their] own jurisdiction"). Walker contends both that the appellees lack standing to contest his appeal and that they lacked standing to file the Motion for Appointment of Trustee in the first place. Walker's arguments are without merit.

The Bankruptcy Code provides that "a party in interest, including . . . a creditor, . . . may raise and appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). "Claim" is defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Section 1109(b) "was intended to confer broad standing" in Chapter 11 cases. *In re Lee*, 467 B.R. 006, 915 (6th Cir. 2012) (quoting *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3rd Cir. 2011)).

It is undisputed that, at the time Walker filed his Chapter 11 Petition, he and his company, REO, were defendants in a pending tort lawsuit brought by the appellees in the Chancery Court for Davidson County, Tennessee, *FTS v. REO*. Because of this lawsuit, Walker identified the appellees as creditors in numerous forms filed in the bankruptcy proceeding. (*See, e.g.*, Amended Schedule A/B, B'cy Doc. No. 88, at 22; Notice of Amendments to Schedules, Doc. No. 88-1, at 1 (giving notice that Schedule B had been amended to identify "[p]otential claims . . . relating to litigation with Family Trust Services, LLC").) As noted above, the action was transferred from the Davidson County Chancery Court to the Bankruptcy Court as an adversary proceeding.

A tort liability claim, even one that the debtor disputes legally and factually, is a "claim" under § 101. *See* 2 Collier on Bankruptcy ¶ 101.05[1] (16th ed. rev. 2011) ("Neither the

8

contingency of the debt nor the immaturity of the obligation affects whether a right to payment is a claim.") (collecting cases). Moreover, the appellees' claims against Walker's bankruptcy estate have expressly been allowed. (*See* B'cy Doc. Nos. 497 (Trustee's Motion to Approve Compromise and Settlement of appellees' claims), 497-1 (proposed Compromise and Settlement Agreement), 514 (Order Approving Compromise and Settlement).)

Because they have "claims"—regardless of whether they are unliquidated, contingent, disputed, and unsecured—the plaintiffs are deemed creditors and therefore parties in interest for purposes of the Bankruptcy Code. 11 U.S.C. §§ 101(10)(A), 1109(b). As parties in interest, they had standing to bring the Motion for Appointment of Trustee. *See* 11 U.S.C. § 1104(a) ("At any time after the commencement of the case but before confirmation of a plan, *on request of a party in interest* . . . , the court shall order the appointment of a trustee . . . for cause . . . or . . . if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate . . . ." (emphasis added)).

Moreover, because they had standing to bring the underlying motion, they also have standing to defend their position on appeal. *See, e.g.*, *In re Cockhren*, 468 B.R. 838, 844 (8th Cir. 2012) ("As a party to the settlement to which the Debtors object, and as a named Appellee in this case, the Bank is an interested party and has standing to defend its position on the settlement and file a brief on appeal."); *In re Daewoo Motor Am. Inc.*, 488 B.R. 418, 430 (C.D. Cal. 2011) (confirming that the party who brought or opposed the motion at issue on appeal has standing to support the bankruptcy court's decision on appeal).

**B.  Merits of the Appeal**

The appellees argue that the appeal of the appointment of the trustee has been rendered moot or equitably moot by subsequent events. Specifically, the Bankruptcy Court denied Walker's Motion to Stay pending his appeal of the Order granting the Motion for Appointment

of Trustee; the Bankruptcy Court appointed a trustee on August 1, 2016 and has entered numerous orders permitting the trustee to sell certain real property owned by the bankruptcy estate to satisfy creditors' claims pursuant to the trustee's plan of reorganization; and the Bankruptcy Court confirmed the Trustee's Second Revised Plan of Reorganization on June 14, 2017. (*See* Doc. No. 25-1, at 161.) In his Reply, Walker contends that his appeal is not equitably moot, because the Plan of Reorganization has not been substantially consummated and no third party would be disproportionately harmed by setting aside the appointment of the trustee.

The court finds it unnecessary to consider the fact-intensive question of mootness or the post-appeal events to which the appellees seek to draw the court's attention. The record relevant to this appeal establishes beyond any doubt that the Bankruptcy Court did not abuse its discretion in appointing a trustee. Walker, in fact, does not actually argue to the contrary. He has not shown either that the Bankruptcy Court's findings were clearly erroneous or that it applied an incorrect legal standard.

With regard to Walker's insistence that the appellees failed to prove fraud, the Bankruptcy Court's decision to appoint a trustee did not rest upon a conclusion that Walker had engaged in fraud. Rather, as set forth above, the Bankruptcy Court determined that the appellees' evidence clearly established *either* dishonesty on the part of Walker *or* "such an extraordinary inattention to detail and/or incompetence" that the Bankruptcy Court did not "feel comfortable leaving [Walker] in charge of a debtor in possession." (Hr'g Tr. 45.) That factual determination was supported by clear and convincing evidence.

As for Walker's argument that the Bankruptcy Court improperly shifted the burden of proof to him to explain why a trustee should not be appointed, Walker is simply incorrect. The Bankruptcy Court noted the abundance of unrebutted evidence showing that *someone* associated with Walker had engaged in forgery. The Bankruptcy Court found it surprising that Walker made

no attempt to explain what had actually happened. As a result of his failure to present any rebuttal proof, he could not dispel the presumption raised by the appellees' evidence that "these incidents reflect some type of improper conduct." (Hr'g Tr. 38.) While the evidence did not affirmatively establish fraud on the part of Walker, as the Bankruptcy Court repeatedly acknowledged, it strongly suggested, at best, incompetence:

> Is it possible that all of this is some big coincidence? Is it possible that Mr. Walker is the victim of some extraordinary mistakes by others on his behalf? Sure, it's conceivable. But what do I have in explanation? Absolutely nothing.
>
> Once there was clear proof that fraud was involved, I would have anticipated some evidence to indicate why there is a logical explanation. And it's particularly troubling because of the very nature of a debtor in possession. . . .
>
> So, what do I do when there's clear evidence that this particular person, Mr. Walker, who . . . is responsible for a significant amount of assets, what do I do when there's clear evidence that he's either been engaged in, connected to, or failed to recognize clear fraud going on relating to his business? . . . .
>
> I'd like to have somebody that says, "here is the reason you can trust me, despite the clear evidence that there's a problem." . . . . All I have is, basically, an argument that somehow all these pieces of evidence aren't quite enough to pass muster to prove fraud.

(Hr'g Tr. 43–44.) In other words, the Bankruptcy Court did not shift the burden of proof; it simply noted that Walker had made no effort to rebut any of the substantial evidence of improper conduct.

Walker also argues that the Bankruptcy Court erred in presuming that Walker had an improper motive in filing his bankruptcy petition in an improper venue. This contention, too, is without merit. Although filing suit in an improper venue does not, standing alone, establish improper conduct on the part of a litigant, the evidence in the record supports the Bankruptcy Court's conclusion that Walker had lied under oath when he stated on his Chapter 11 Voluntary Petition that he lived in Humboldt, Tennessee and that, "[o]ver the last 180 days before filing this petition, I have lived in this district longer than in any other district." (B'cy Doc. No. 1, at 2; *see*

*id.* at 13 (attesting under penalty of perjury that the information provided on the form was true and correct).) The Bankruptcy Court found that this was one additional piece of evidence of untrustworthiness on the part of Walker that weighed in favor of appointing a trustee for cause.

Finally, Walker raises an utterly baffling argument that the issues raised by the appellees are barred by *res judicata* because they have already been litigated in other courts. That argument is likely moot as a result of the Order Approving Compromise and Settlement of the appellees' claims (B'cy Doc. No. 514.). Regardless, insofar as Walker is attempting to contest the merits of the appellees' underlying tort claims against Walker and REO, that matter is not before this court and is irrelevant to the single issue that is presented: whether the Bankruptcy Court abused its discretion in appointing a trustee.

## IV. Conclusion

For the foregoing reasons, the July 13, 2016 Order of the United States Bankruptcy Court for the Middle District of Tennessee in *In re: Charles E. Walker*, Case No. 3:16-bk-03304, is hereby **AFFIRMED**. All other pending motions, including the appellees' Motion to Supplement Record and Take Judicial Notice (Doc. No. 25) (as corrected by Doc. No. 29) and Motion to Consider Post-Judgment Facts and Take Judicial Notice (Doc. No. 34), are **DENIED AS MOOT**.

It is so **ORDERED**.

ENTER this 31st day of January 2018.

_____
ALETA A. TRAUGER
United States District Judge